Curia, per
Butler, J.
The only question in the case is, whether William Calhoun had legally vested in him the exclusive title to the negroes in question. His right depends on the sufficiency of the assent of the executor, Morris. It was competent for Calhoun to have received in his own right by virtue of his marriage, the legacy bequeathed in terms to his wife.
It was in the power of the executor, however, to have withheld his assent for the benefit of the wife, until her rights could be recognized and secured by a court of Equity. Has the husband received the property by the assent of the executor, is the proposition. I know of no way in *29 which a man’s rights may be affected, except by his own acts, or those of an agent duly, authorized. It is not pretended that Calhoun has ever accepted the negroes himself, by any understanding between him and the executor. There does not seem to have been any communication between them- since the death of the testator. Calhoun either knew of his rights, or was ignorant of them; and in either point of view, an inference may be drawn unfavorable to his acceptance of the legacy. If he knew of his rights, he has not thought proper to assert them for his own enjoyment; but has acquiesced in the propriety of his wife taking the benefit of the legacy intended for her; which could only be done by the cestui-que trust holding by the permission of the trustee, and subject to his title. If he has been ignorant of the legacy, then he has taken it by an implication ’ of agency in his wife to receive it for him. Agency itself implies confidence, and an approbation of the acts of another. Hence, the wife is frequently regarded as the agent of her husband, while they live together, and her acts will be regarded as obligatory on him, where his assent, knowledge and approbation may be inferred. But when the husband has deserted the wife, and lives in another jurisdiction, at a great distance from her, the presumption of agency ceases, and the separate existence and rights of the wife are to be more regarded by courts taking cognizance of her acts.
In relation to the property in controversy, Mrs. Nancy Calhoun had rights wnich could be recognized by the law. And why suppose that she received the property for the benefit of her husband and to her own prejudice ? ' It certainly could not have been her design to do so. Nor does it seem now to have been the'intention of the executor to part with his legal dominion over the negroes for the benefit of the absent husband. Nor does it follow that the husband would,' as a matter of choice, have received the negroes for his exclusive enjoyment, to the prejudice of his wife __ and children. A husband may inflict injury on his wife by infidelity and desertion, but might not be willing to treat her with injustice, -so far as it regards property intended for her sole usé and. benefit. A sense of *30 justice is not inconsistent with a want of affection. If it had been a matter of option, the husband might have been unwilling to take the property from the wife. Indeed, it may have been his. interest that his wife and children should have it, to the exclusion of his creditors. And under some circumstances, his actual refusal to take the property from the executor, would not be unnatural or improbable. At any rate, there is no necessity to say in this case, that the possession of the wife was ipso facto the possession of the absent husband. If he ever had rights, they have been vested in him without his knowledge and approbation, and have also been transferred by the executor without design, and in derogation of the rights of others, for whom he ought to hold the property.. We will not go so far as to say that the husband’s assent shall be presumed, upon the assumption of its being for his benefit, because there was no proof of his dissent. On the contrary, where there has been no knowledge of right, we will not presume assent. Motion granted.
Richardson, O’Neall, and Frost, JJ. concurred.
Wardlaw, J. having been of counsel in the case, gave no opinion.